[No. B020755. Second Dist., Div. Two. Aug. 29, 1989.]

MERETTA J. BROWN, Plaintiff and Appellant, v.
PRESLEY OF SOUTHERN CALIFORNIA et al., Defendants and
Respondents.

**COUNSEL**

Leon Small for Plaintiff and Appellant.

Lynberg & Watkins, Douglas G. MacKay, Maroney and Brandt, Barry Brandt, Baraban & Teske and Shirley A. Fagan for Defendants and Respondents.

## OPINION

**GATES, J.**—Plaintiff Meretta J. Brown appeals from the order striking her complaint and dismissing with prejudice case No. EAC42690 as a sanction for her earlier failure to comply with a discovery order. She contends: "A) The trial court's first order compelling Brown to undergo post-arbitration discovery was plain error and an abuse of discretion. B) The trial court's June 19, 1986 order denying Brown's motion for reconsideration and dismissing the entire action should be reversed in that it constituted a clear and gross abuse of discretion. C) Assuming, *arguendo,* the matter was properly dismissed as to King, the trial court abused its discretion by dismissing as to Presley and Smith."

On June 24, 1983, appellant filed her first amended complaint seeking damages from defendant Presley of Southern California, a corporation (Presley). She alleged that in connection with her purchase of certain real property Presley had contracted to construct a house and other improvements in a workmanlike manner but instead had done so in a fashion that led to "subsidence of walls, cracking and separation of slabs and foundations, and the inundation of water into the living room and kitchen . . . ."

Presley, in turn, brought into the case, by way of cross-complaints for indemnity, other parties with whom it apparently had subcontracted. These included L. D. King Enterprises (King).

The cross-complaint on King was not served, however, and after appellant had been deposed and all appropriate discovery had been completed between appellant and Presley, the matter was submitted to arbitration pursuant to Code of Civil Procedure section 1141.10. Although appellant prevailed therein she deemed the damages awarded to have been inadequate to cover her losses and therefore requested a trial de novo.

At this junction Presley served its cross-complaint for indemnity against King. Anticipatably King demanded the right to begin discovery afresh. Equally understandably, appellant's counsel, Leon Small, felt that a party his client had not brought into the action and whose presence was quite unrelated to her claim, should, at least in the absence of a showing of good cause, be barred from belatedly demanding further discovery by Code of Civil Procedure section 1141.24.[1] He so advised his client and opposing counsel.

---

[1] Section 1141.24 provides: "In cases ordered to arbitration pursuant to subdivision (a) of Section 1141.16, absent a stipulation to the contrary, no discovery other than that permitted by Section 2037 is permissible after an arbitration award except by leave of court upon a showing of good cause."

When, as a consequence, appellant failed to appear for the deposition demanded by King, King obtained an order requiring compliance and, as a sanction, was awarded $417.50 in attorney fees. Appellant's counsel was not pleased and considered challenging this ruling by writ. In the ensuing confusion, appellant's counsel advised King's that a calendar conflict would prevent him from attending the ordered deposition on the date scheduled. King's counsel, therefore, canceled that deposition and moved to have appellant's complaint *against Presley* dismissed as a sanction.

This anomalous situation, of course, was the direct result of allowing Presley to so belatedly bring a third party, King, into appellant's action. That is, although apparently appellant theretofore had complied with any demands made by Presley for discovery, King, once entangled, could only be liberated by rewarding Presley.

Appellant's counsel ultimately must have determined the most expeditious course, whether legally mandated or not, was simply to pay the sanctions and have appellant submit herself to yet another deposition. Assuming his decision would render the pending motion to dismiss moot, appellant's counsel communicated it to King's counsel. The latter, however, declined to withdraw his motion without authorization from his client. Though the declarations of these dramatis personae differ slightly from this point forward, it is undisputed that when appellant's counsel arrived at the scheduled hearing on King's motion to strike appellant's complaint at 9:45 a.m. rather than 9 a.m., he found the motion already had been granted and appellant's action against Presley had been dismissed with prejudice.

Appellant moved for reconsideration, seeking in the alternative relief under Code of Civil Procedure section 473. Her attorney declared he had failed to file opposition papers to King's motion because he "believed the motion would probably go off calendar in view of [his] commitment to Mr. Brandt [King's attorney]" that appellant would give another deposition and the sanctions would be paid. As to his absence from the hearing, Small asserted he had asked Brandt's secretary on May 19 "to advise Mr. Brandt to request the hearing for 9:45 rather than 9:00 a.m." However, Brandt did not appear and Presley's counsel, Patrick Graves, who was present, did not apprise the court that Small would be arriving late or of his expressed willingness to pay the sanctions and to produce appellant for a deposition.

At the hearing on appellant's motion seeking relief, the following colloquy occurred between appellant's counsel and the court: "Mr. Small: I have [seen the court's tentative ruling], and I would like to argue as to it.

"We are talking about dismissing plaintiff's entire case based on what I perceive as a breakdown in communication here.

"THE COURT: Well, the biggest problem with your argument is even if you had been here when this thing was called and hadn't been late, there was no written opposition filed and I wouldn't have considered your oral argument anyway. So that's where—I mean, this thing is just one problem after another. And that's the final culmination of it.

"MR. SMALL: Your Honor, I see it as one problem after another, but not if [sic of] my making—if I can argue—Your Honor, can I argue on this thing?

"THE COURT: Yes, Go Ahead.

"MR. SMALL: Your Honor, this originally—all of this started from the fact a cross-defendant had noticed the deposition of the plaintiff after an arbitration on the de novo. I was of the view and continue of the view that there was no discovery permitted after an arbitration by a party, even though it got into the arbitration because I had nothing to do with bringing that party into the case. I only sued the defendant. Cross-defendant was served after the arbitration.

"They wanted to take plaintiff's deposition. Plaintiff had been deposed on two occasions before. I made copies of that available. They didn't want it.

"They come in and file a motion to compel the deposition. I file opposition to that motion, citing the statutes, saying there has to be leave of court obtained for any discovery on a de novo. The court rejects my position for reasons that I still quite don't understand, but the court rejected my position and said the deposition is to provide—or for me to pay sanctions, even though I feel I based it directly on the statute.

"I had plans, as I indicated on my papers, to take that up on a writ but because of my vacation time and other problems that are indicated in my moving papers, I didn't have the opportunity to do that.

"They again noticed her deposition. They set the hearing for that for May 1st. They set a motion to dismiss the complaint. That was the time when I was away.

"I might add, Your Honor, that in every case here, in every prior instance whether it was motion or appear, I have appeared and participated, even on relatively minor matters such as requests bifurcating the trial.

"We have an interest in proceeding on this case, and it's now set for trial on August 27th. I never neglected this in any way.

"There was a motion by the defendant to bifurcate. I couldn't be here on that day because I had another trial on that day, and I filed a written opposition and I indicated what our position was.

"On the 15th, which is about three days after I got back from vacation, I called Mr. Brandt in connection with this hearing set for May 20th. I told him despite the fact that I still have questions about the earlier court order, I'm prepared to produce plaintiff for deposition and pay him the sanctions that he requests and will he take the motion for the 20th off calendar. He says he'll get back to me and let me know what his carrier wants to do. I don't hear from him again.

"I—now he claims now that his secretary called someone at my office, but I have filed a declaration by my secretary and my own declaration saying I never received a message that he insisted that the motion proceed. Had I done so, Your Honor, of course, I would have filed opposition, and, of course, I would have made arrangements to be here. I filed opposition in every instance, and I participated in every phase of this case.

"THE COURT:  Well, that particular—assuming what you say is true, the court is compelled that insurance adjustors use that sort of response on— you know, with pro pers that that's not an estoppel. I mean, that's ambiguous enough so you're on notice that you don't have any firm commitments. I can't believe by that statement that you would be naive enough to rely on that.

"MR. SMALL:  It isn't a question—

"THE COURT:  If this were twenty-five years ago, I might have some sympathy for you, Mr. Small, but this is a dog-eat-dog business and it's the law of the jungle and people are cutting each other up out there, and I can't believe that you are—in this day and age that you're going to rely on some statement like that. It just shows, you know—you know, it's the epitome of naivety.

"MR. SMALL:  Your Honor, how am I being naive if he—

"THE COURT:  You're not being naive by asking him, but you're being naive on relying on I'll get back to you on some sort of a waiver.

"MR. SMALL: It isn't a question of waiver, Your Honor. When I didn't hear from him by the 16th. I called his office on the 19th, and I said, "What's the story?" I assume when I didn't hear from him that the motion would be taken off calendar and we'd set the deposition. When I didn't hear, I called his office again, and then I was told—

"If I could just continue on. I see you shaking your head already. If I could just say my piece.

"THE COURT: Go ahead.

"MR. SMALL: We are talking about dismissing her case. We are talking about a serious matter. We are not resetting or answering further interrogatories. We are talking about dismissing her entire action.

"So I called his office on May 19th. He wasn't in. I talked to his secretary. She tells me that Mr. Brandt will be appearing on the 20th. They have decided to proceed with the motion.

"I said I have to be late as I was on the first go-around on this motion because I had to take my kids to school, and I have no way of getting here by nine o'clock. I left word of that and relayed that to the court.

"I attached a transcript of those proceedings. The hearing was conducted at 10:30 [*sic* 9:30] rather than 9:00, and I arrived at 9:45. On May 20th, I was here at 9:45.

"Mr. Brandt's own declaration tells the court and admits to the court that I had advised him that I would be late and requested that they put it on second call. What happened was for reasons unbeknownst to me and besides the assurances from his office, Mr. Brandt doesn't appear on that day. Instead, another party, Patrick Graves, appears on that day.

"According to Mr. Brandt's own declaration, he tells Mr. Graves to advise the court that I would be late, but Mr. Graves doesn't do that. He's here at 9:00. No one appeared.

"Of course, I didn't call the court and tell them I would be on second call or I needed second call. I didn't think it was necessary. I had informed Mr. Brandt on the first go-around on the motion that I would be late and he had

so advised the court, and I trusted him to do it the second time. But I still think there's a certain amount of honor and trust that one person can put into another and not have a major case dismissed because I was fifteen minutes late.

"Now, I don't think that that's fair or that's right for the plaintiff, my client, who is certainly playing [*sic* paying] in all of these—goes back and forth—should suffer the ultimate sanctions here of dismissal when this can easily be remedied.

"I also told Mr. Brandt that I'll pay him the sanctions; that I'll produce the client for deposition. We have a trial set. I don't think the deposition should even be taken in the first place; that I offered to make copies of the first hearing. Two volumes are already available.

"And I'm not even suing his client, and now I've got to go through the deposition by him for somebody that I'm not even suing and that I have no claims against.

"I ask, again, Your Honor, that the court reconsider. I think the excusable neglect to the extent that there is neglect here is indicated in the papers.

"I did not receive a message from his office that the motion for May 20th would proceed. Had I received that message on May 16th, I had time on that particular day to file something. Even if it would be one day late, at least there would have been something in the file.

"And I appreciate the five-day rule and the five calendar-day rule, and I know this court's reputation for not—for giving these law and motion matters very, very strict time requirements and all of that. I appreciate that. Every prior motion before this court or any other judge, I filed timely opposition and I've appeared. On the one time that I haven't appeared and I was there fifteen minutes late, the court is going to dismiss the entire case. I don't think that that's fair. I don't think that that's just in view of the notice that was given to Mr. Brandt.

"What is the prejudice to his client here? He claims that he hadn't had her deposition taken. I offered to make the two volumes available. If he wants to do it again, we'll do it again.

"But now we have Mr. Graves not informing the court that I would be late when I arrived here at 9:45. And when I approached the clerk about

this, she told me that the hearing was already conducted in my absence. No one appeared.

"When I asked to have a hearing before the court, Your Honor said, well, the opposition isn't here and you didn't file any opposition. I didn't file any opposition because I really didn't think that there would be a need to. Of course, I would have filed opposition had I known that the motion was going to proceed. At least give me a chance to do that.

"THE COURT: Okay.

"The motion is denied."

█ It is manifest that the court's use of the ultimate sanction of dismissal was excessive. That is to say, if Small had appeared at 9 a.m. on May 20 expressing a willingness to produce his client for a deposition and to pay the sanctions imposed pursuant to the court's earlier order, it would unquestionably have been an abuse of discretion to strike appellant's complaint and dismiss the action. That he arrived after the order had already been made because *Presley's* attorney[2] had neglected, inadvertently or otherwise, to inform the court Small would be 45 minutes late, cannot alter this fact.

We are particularly troubled by the court's remarks characterizing the legal profession as "a dog-eat-dog business," "the law of the jungle" and "people . . . cutting each other up." If this is, indeed, the modern trend, it should be curtailed so far as possible, not rewarded.[3]

Inasmuch as appellant heretofore has agreed to be deposed by King and to pay the sanctions previously imposed, we need not address her first contention relating to the propriety of the trial court's order of February 10 and the potential applicability of Code of Civil Procedure section 1141.24 to cross-defendants in King's position. █ We note only that the truly difficult issue presented by the present factual scenario was not whether King should have been entitled to full discovery in connection with Presley's private dispute with it. Rather, the question was, should Presley have

---

[2] Although Presley had purportedly joined in King's motion, it certainly was not the "real party in interest" in the discovery dispute.

[3] We do not know if the court intended to characterize the actions of defense counsel in such pejorative terms; we certainly would not do so. So far as we are able to determine, counsel, as was their right as adversary advocates, conducted themselves as they legally were entitled to do. However, even legitimate tactics must sometimes yield to the only goal that justifies the very existence of our judicial system, i.e., the resolution of our citizens' disputes and the administration of justice.

been allowed to delay and complicate appellant's separate action by so tardily seeking to thrust King therein. A trial court is certainly not required to permit such a procedure. (See Code Civ. Proc., § 1048, subd. (b); *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 606 [147 Cal.Rptr. 182, 578 P.2d 899].)

The order striking the complaint and dismissing with prejudice case No. EAC42690 is reversed. Costs to appellant.

Roth, P. J., and Compton, J., concurred.