Filed 4/7/15  Reiter v. C.Martin Co. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| JOSEPH REITER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>C. MARTIN COMPANY,<br><br>        Defendants and Respondents. | A141477<br><br>(Mendocino County<br>Super. Ct. No. SCUK CVG 13-62126) |

Plaintiff and appellant Joseph Reiter (Reiter) appeals from an order granting C. Martin Corporation relief from default.  We affirm.

## BACKGROUND

On May 3, 2013, represented by attorney Mark Clausen, Reiter filed a complaint in the Mendocino County Superior Court naming three defendants:  "Gilbert Duran, individually and dba Duran Construction; Becky Duran; and C. Martin Corporation." Under "General Allegations," the complaint alleged in pertinent part as follows:

"7.  On or about February 7, 2013, plaintiff and DURAN entered into a written contract, a true copy of which is attached as exhibit 1.  The core terms of the contract called for DURAN to install a 450 feet sewer line and 2 manholes on a 4 lot minor subdivision in Covelo, California.  DURAN was to obtain the necessary permits and approvals for the required excavation of the property and installation of the sewer line and manholes.  DURAN was to be paid a total of $49,500—$24,750 up front, with 2 additional payments of $12,375 upon completion of specified work due under the contract.

1

"8.  DURAN knew the subdivision is located adjacent to Indian tribal land and that the sewer line called for by the contract requires entry on and excavation of Indian tribal land, such that both tribal and Mendocino County permits and approval are needed to complete the work called for by the contract.  DURAN also knew that Indian officials are particularly sensitive to construction work on or near tribal land, . . . .

"9.  DURAN represented that they had the necessary skill, education, expertise and equipment to complete the work in a timely and competent manner in accordance with industry standards, and had already secured or would timely secure the necessary permits and approval from Indian officials and the County of Mendocino.  DURAN also represented that they are employed by or bonded through defendant C. Martin Corporation, and C. Martin Corporation would compensate plaintiff in the event that DURAN failed to timely perform in accordance with the terms of the contract. . . . Gilbert Duran said, for example, that he was employed and bonded by a 'multi-million dollar' company in C. Martin Corporation.  Gilbert Duran often boasted on his employment with C. Martin Corporation.

"10.  In reliance on such representations, plaintiff paid DURAN $25,000 (twenty five thousand dollars) up front—$250 more than was due under the terms of the contract.  DURAN accepted the money and assured plaintiff that the work would be performed in a timely and competent manner. . . .

"11.  DURAN failed to secure the necessary permits and approval for the work. DURAN did not even apply for permits from, or otherwise seek approval of, Indian tribe officials or the County of Mendocino, and did not meet with Indian tribal officials or representatives of the County of Mendocino.  DURAN commenced work nonetheless. Not surprisingly, Indian tribal officials and representatives of the County of Mendocino were extremely upset when they learned that DURAN had commenced work. Individually and collectively, the Indian tribal officials and County representatives voiced their displeasure and objections to DURAN and plaintiff, such that the work due under the contract had to be stopped and could not be completed.

2

"12. DURAN did not thereafter secure the necessary permits or approval for completion of the work, nor did he attempt to do so, and he did not otherwise resolve the problems with plaintiff, Indian officials and the County of Mendocino. The work was never completed by DURAN. Nonetheless, DURAN retained all of the $25,000 and has refused to return any portion thereof, despite multiple demands from plaintiff. DURAN left several other contract jobs incomplete when he skipped town to do subcontract work elsewhere for C. Martin Corporation. While DURAN takes in significant income from C. Martin Corporation, the many jobs he contracted to do stand incomplete and idle."

The complaint purported to allege three causes of action: (1) breach of contract, (2) fraud, and (3) unlawful practice of law without a license, the last claim based on alleged conduct of Becky Duran. As pertinent here, the breach of contract claimed alleged this:

"16. According to representations by DURAN, C. Martin Corporation has bonded DURAN's work and agreed to compensate plaintiff for any and all damages suffered by him as a result of DURAN's failure to perform under the contract. Plaintiff therefore alleges that C. Martin Corporation is liable along with Gilbert Duran and Duran Construction for breach of contract. . . . [¶] . . . [¶]

"18. Demand is hereby made for C. Martin Corporation to perform under its bond and in accordance with its agreement with DURAN, and to timely make payment to plaintiff in the initial sum of $25,000 to reimburse plaintiff for the payment advanced to DURAN for work due under the contract, and thereafter pay plaintiff an additional sum sufficient to compensate plaintiff for all damages incurred as a result of the breach of contract. DURAN represented that C. Martin Corporation would make good if DURAN failed to perform as agreed. C. Martin Corporation must now do so."

And the fraud claim alleged this: "According to representations by DURAN, C. Martin Corporation has bonded DURAN's work and agreed to compensate plaintiff for any and all damages suffered by him as a result of DURAN's failure to perform under the contract, including DURAN's fraudulent conduct. Plaintiff is informed and believes and thereon alleges that C. Martin Corporation knew that DURAN had made false

3

representations to plaintiff as herein described. C. Martin Corporation owed a duty to plaintiff to set the record straight and reveal the true facts. C. Martin Corporation did nothing to disavow or refute DURAN's representations and did not otherwise inform plaintiff of the true facts. Plaintiff therefore alleges that C. Martin Corporation is liable for fraud along with DURAN." The prayer of the complaint asked for "compensatory damages according to proof."

As indicated, this appeal involves a default against C. Martin Corporation (C. Martin). Because it does, and because a default has such a drastic effect, we digress from the chronology to briefly comment on Reiter's complaint—and how it fails to even state a claim against C. Martin. To begin with, although the complaint alleged that a copy of the contract was attached to the complaint, it was not. But beyond that, it appears that insofar as the "breach of contract" action is against C. Martin, it is based on a claimed performance bond, which also was not attached to the complaint. To the extent that any claim against C. Martin was based on a representation by Duran, agency cannot be shown by representations of the agent. And any fraud claim against C. Martin would fail because no representations by it are alleged. In sum, Reiter's complaint did not adequately allege any claim against C. Martin.

Attorney Clausen, perhaps with the assistance of his client Reiter,[1] set about attempting to effect service of the complaint, details of which are the subject of much discussion in the parties' briefs. Though some of those details are discussed later in this opinion, they are not particularly germane to the issues before us, and we here recite the facts that are, which are these:

On September 6, 2013, Attorney Clausen filed a request for entry of default and default judgment against "Gilbert Duran dba Duran Construction; Becky Duran; and

---

[1] Reiter's opening brief here quotes this footnote from a declaration by Attorney Clausen made in the trial court: "[Reiter] has been involved in many court cases [and consequently he] is generally familiar with the legal process and often represents himself. Though represented by me in this case, [Reiter] remains involved in the litigation process—sometimes at my behest, sometimes of his own accord."

4

C. Martin Corporation." However inappropriately, the request sought that judgment be entered as follows:

| "2. Judgment to be entered. | Amount | Credits acknowledged | Balance |
|---|---|---|---|
| "a. Demand of complaint | $25,000 | $00.00 | $25,000.00 |
| "b. Statement of damages | | | |
| "(1) Special | $ N/A | $ N/A | $ N/A |
| "(2) General | $ N/A | $ N/A | $ N/A |
| "c. Interest | $1,312.50 | $1,312.50 | $1,312.50 |
| "d. Costs (*see reverse*) | $735.00 | $735.00 | $735.00 |
| "e. Attorney Fees | $6,000.00 | $6,000.00 | $6,000.00 |
| "f. **TOTALS** | $33,047.50 | $33,047.50 | $33,047.50." |

On that same date, the clerk checked the box that read, "default entered as requested."

As C. Martin points out, the default judgment against C. Martin entered by the clerk was improper, as Clausen's request was deficient in several particulars. As the leading practical treatise sums up, in connection with a default on a action based on contract, "the amount due must either be *fixed* in the contract itself or be *determinable by calculation* from its terms. If there is any uncertainty as to the amount due, the court clerk has no power to resolve it. Instead, a court judgment will be required." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trail (The Rutter Group 2014) ¶ 5.128, p. 5-34 (Weil & Brown).) Moreover, an application for default seeking "Costs" "must be filled in at the time judgment is sought, showing plaintiff's recoverable costs and disbursements to date. . . [and] [a] declaration is required by plaintiff's attorney as to the correctness of the costs claimed." (*Id.* at ¶ 5:158, citing Code Civ. Proc., § 1033.5.) There was no declaration here. Finally, a default judgment that includes attorney fees may be entered by a court clerk under very limited circumstances, circumstances not present here, with Reiter's damages uncertain and he providing no basis for attorney fees. (See, for example, *Landwehr v. Gillette* (1917) 174 Cal. 654, 657–658; *Liberty Loan Corp. of North Park v. Petersen* (1972) 24 Cal.App.3d 915, 919.)

5

On October 4, 2013, represented by Carter, Momsen, & Knight, defendants Gilbert Duran and Becky Carter (formerly Duran) filed a motion for relief from default (Duran motion).

That same day, represented by Ogletree, Deakins, Nash, Smoak, & Stewart, PC, C. Martin filed a joinder in the Duran motion. The joinder was accompanied by declarations of Harold J. Huge and Harold Manning, along with a proposed answer. Huge, a vice president of technical operations for C. Martin, testified in pertinent part as follows:

"4. To my knowledge, Mr. Manning's address for purposes of receiving service on behalf of C. Martin is 1058 W Avenue M-14, Suite B, Palmdale, California 93551. My understanding is that Mr. Manning updated this information with the California Secretary of State as of December 2010 with the above Palmdale address. Also, my understanding is that Reiter never served Mr. Manning at the Palmdale address.

"5. Notwithstanding, C. Martin never received actual notice in time to defend itself against this action. The first time C. Martin was made aware of the suit is when it received Reiter's Entry of Default which was mailed to C. Martin's Las Vegas, Nevada address.

"6. C. Martin's lack of actual notice in time to defend the action was not caused by its avoidance of service or excusable neglect.

"7. C. Martin will vigorously defend this action, as it not [*sic*] a proper party to the action. Indeed, the referenced construction project at issue in the Complaint does not involve C. Martin. C. Martin works with Duran Construction exclusively under a Joint Venture Agreement with the Small Business Administration, and this project does not fall within the confines of this work. C. Martin has no role in the referenced construction project; did not sign any agreement or participate in any manner the [*sic*] project; did not receive any monies from the project and has no otherwise association with this project."

Reiter stipulated to vacating the default and default judgments against Gilbert Duran and Becky Carter, but opposed vacating the default and default judgment against C. Martin. So, on October 31, Reiter filed his opposition to "Defendant C. Martin

6

Corporation's Motion to Vacate Default Judgment."  The opposition was accompanied by two declarations, those of attorney Clausen and Reiter himself.  Reiter's declaration testified to his version of events pertaining to claimed service on C. Martin, including his active participation in the service of process and his claimed communication with various interested parties, including Manning.  Reiter's declaration included this:

"2.  As the owner of a business and frequent buyer, seller, renter and developer of real property, I am well-versed in the litigation process and often represents himself [*sic*]. Though I am represented by counsel in this case, I nonetheless remains [*sic*] actively involved.  [¶] . . . [¶]

"5.  In mid-June, more than 30 days after the May 9, 2013 sub-service on Manning at the Ridgecrest address, I asked my attorney, Mark Clausen, to enter C. Martin's default.  Attorney Clausen was in trial, so he asked me to telephone Manning to ensure that Manning was aware of the pendency of the action and service of process.

"6.  I telephoned Manning and advised that substitute service had been effected on him at the Ridgecrest address.  Manning stated he was not sure that he was still listed as the agent for service of process for C. Martin.  I assured Manning that he was. . . ."

The argument in Reiter's opposition relied on his and Clausen's claimed version of events, and concluded as follows:  "Code of Civil Procedure section 473 is designed to allow relief from default for defendants as a result of their *excusable* mistake or neglect. The statute affords no relief to defendants such as C. Martin who intentionally obfuscate the truth in an effort to hide their inexcusable failure to comply with the Corporations Code and Code of Civil Procedure provisions requiring annual filing of a statement identifying the name and *address* of the corporation's agent for service of process, and *timely* filing of a notice of change of address if the agent relocates.  Service was validly effected via the Ridgecrest address on file with the State at the time of service in May 2013.  Manning and C. Martin's untimely post-service filing of a notice of change of address does not defeat the valid service of process which had already been made at the Ridgecrest address on file with the State."

On November 1, C. Martin filed its reply, which began as follows:

7

"Defendant C. Martin Company, Inc. ('C. Martin'), erroneously named as C. Martin Corporation, requests that the Court exercise its broad equity jurisdiction to relieve C. Martin from the Entry of Default and Default Judgment in this action. C. Martin was *never served* with the Summons and Complaint and had no actual knowledge of the filing prior to receipt of the Default entered in this action, thus rendering it unable to defend itself.

"Further, it has absolutely no involvement in the contract at issue in this action. C. Martin can demonstrate that it has a meritorious case, has articulated a satisfactory excuse for not responding to the original Complaint, and has presented evidence that it acted diligently to set aside the Judgment. Fairness dictates that C. Martin should have the opportunity to defend itself upon the underlying merits of the case.

"Accordingly, this Court should grant C. Martin's Motion for an Order Setting Aside and Vacating Default and Default Judgment and Granting Defendants Leave to Defend and allow C. Martin to defend itself in this litigation."

The reply memorandum included arguments that "C. Martin Has Evidence That It Did Not Have Actual Notice In Time to Defend,", and "Alternatively, The Court Should Exercise its Broad Equity Power to Relieve C. Martin From Default." C. Martin's reply also contained a supplemental declaration from Manning, taking issue with Reiter's declaration in this respect: "6. With respect to the call referenced by the Plaintiff in this action, I do recall receiving a call in or about July, 2013. I do not recall who made the call and I was not aware that it was Plaintiff or his representatives. At that time, the individual asked me if I remained the Service of Process Agent for C. Martin, which I confirmed. I further advised that I did not receive a copy of any Summons and Complaint and that if C. Martin was to be served, the best address was the Palmdale location. This was the extent of this call and I never received anything following this call. Despite what is represented by Plaintiff, I did not log on to the Secretary of State website, nor did I reject an offer to send me a Summons and Complaint. [¶] 7. Prior to the entry of default in this case, I never obtained actual notice of this lawsuit. My lack of

actual notice in time for C. Martin to defend the action was not caused by my avoidance of service or excusable neglect."

The motion came on for hearing on November 8, 2013, at which Reiter himself argued, apparently having filed a substitution of counsel form to allow him to do so. On that same day the court entered its order granting the motion.

On April 1, 2014, Reiter filed his notice of appeal, asserting "no notice of entry of order filed."

## DISCUSSION

Seeking to overturn the trial court's granting of relief, Reiter makes two arguments, the first procedural, the second factual. The first argument is that C. Martin's joinder in the Duran motion was not proper. In Reiter's words, "C. Martin 'joinder' was . . . procedurally defective and should have been denied on that ground alone. (See, gen., *Frazer v. Seely* (2002) 95 Cal.App.4th 627 [summary judgment should have been denied by trial court . . . .)]" Reiter is wrong.

As Weil & Brown observes:

"[9:27] '**Joinder' in another's motion**: It is common practice for attorneys to join in another party's motion by simply filing a pleading captioned 'Joinder in Motion of . . . for . . . ," stating that the joining party adopts the requests and the points and authorities contained in the joined motion. (See *Barak v. Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 660–661.)

"(1) [9:27.1] **Limitation—summary judgment:** A party may *not* obtain a summary judgment in its favor by joining another party's motion for summary judgment because of the requirement that *each moving party* file a *separate statement* of undisputed facts (¶10:95.3) (See *Barak v. Quisenberry Law Firm*, *supra*, 135 Cal.App.4th at 660–661.)." (Weil & Brown, *supra*, ¶9:27, p. 9(l)-18.) In short, joinder is proper except in summary judgment motions, which was not the motion involved here.

But even if the joinder were improper, Reiter waived any such impropriety by appearing, and arguing, at the hearing. " 'It is well settled that the appearance of a party

9

at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of motion. [Citations.] This rule applies even when no notice was given at all.' " (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697.) As Justice Croskey put it in *Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 342: "A party who appears at the hearing on a motion and contests the motion on the merits without objecting to a defect or irregularity in the notice of motion ordinarily is deemed to waive the defect or irregularity . . . ."

Reiter's factual argument is that "the 'Joinder' also should have been denied on the merits." Ignoring most of the governing principles, Reiter focuses on his version of claimed facts, concluding with these two subarguments:

"C. C. Martin did meets [*sic*] its burden of proof that it had not received actual notice of the pendency of the lawsuit in time to defend the action in advance of entry of default.

"D. Presuming C. Martin lacked actual notice, it was due to C. Martin's own inexcusable neglect in failing to timely and properly report information to the Secretary of State concerning C. Martin's Agent for Service of Process."

The subarguments are wide of the mark, especially in light of the principles governing here, most of which were set forth by us in *Fasuyi v. Permatex* (2008) 167 Cal.App.4th 681 (*Fasuyi*)—a case relied on by C. Martin and utterly ignored in Reiter's reply brief.

*Fasuyi* was a products liability case in which the trial court granted a default judgment. Permatex, the defendant manufacturer, promptly filed a motion for relief, which the trial court denied. We reversed, in an opinion containing an exhaustive discussion of the principles governing defaults and relief from them. That discussion began with the role of the court in default judgments, noting among other things how the plaintiff must "precisely [follow]certain procedures." (*Fasuyi, supra,* 167 Cal.App.4th at p. 691.) We went on to elaborate on the subject of discretion, and its abuse, and then concluded as follows:

10

"Applying that law here leads inescapably to the conclusion that the trial court abused its discretion here—all legal principles favored Permatex.

"The most fundamental of those principles is that affirmed in *Au-Yang v. Barton* (1999) 21 Cal.4th 958, 963: ' "[T]he policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary." ' (*Ibid.*, citing among other cases, *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 855 (*Weitz*).)

" 'Because the law favors disposing of cases on their merits, "any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." ' (*Rappleyea* [*v. Campbell* (1984)] 8 Cal.4th [975,] 980, quoting *Elston v. City of Turlock* [(1985)] 38 Cal.3d [227,] 233 (*Elston*).) In Witkin's typically succinct statement of the rule, the remedial relief offered by section 473 is 'highly favored and is liberally applied.' (8 Witkin, Cal. Procedure [(5th ed. 2008)] Attack on Judgment in Trial Court,[§ 144, pp. 735-736] and numerous cases there collected.)

"As a result of those principles, the Supreme Court has recognized that if a defendant promptly seeks relief (as Permatex did here) and there is no showing of prejudice to Fasuyi (as is the case here), ' "very slight evidence will be required to justify a court in setting aside the default." ' (*Elston, supra,* 38 Cal.3d at p. 233.) Or as *Elston* put it two pages later, '[u]nless inexcusable neglect is clear, the policy favoring trial on the merits prevails.' (*Id.* at p. 235.) There was more than slight evidence here. And no inexcusable neglect." (*Fasuyi, supra,* 167 Cal.App.4th at p. 696.)

The law requires Reiter to show an abuse of discretion, which abuse must be shown whether the motion is based on section 473 (*Fasuyi, supra,* 167 Cal.App.4th at p. 694) or section 473.5. (*Fox v. Townsend* (1906) 149 Cal. 659; *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1444; *Trujillo v. Trujillo* (1945)

11

71 Cal.App.2d 257, 262.) Reiter has not shown such abuse—indeed, he is foreclosed from even attempting to.

As indicated, the motion came on for hearing in court. Reiter's opening brief acknowledges, "[t]here is no reporter's transcript.[7]" And footnote 7 says this: "As a cost-cutting measure in the face of a significant budget crisis, the Mendocino County Superior Court no longer provides court reporters for civil matters as a matter of course. A party desiring a court reporter must pay for one in advance. Reiter and his counsel (who hail from Sonoma County) were unaware of this rule change when the 'joinder' was heard. Consequently, the proceedings were not transcribed."

Aware or not, the leading treatise sums up Reiter's predicament this way:

"d. [9:171] **Court reporters:** Although some courts still provide court reporters at all law and motion hearings, courts are increasingly opting not to do so.

"If the court does not provide a reporter, its local rules must so state and spell out the procedure for obtaining a reporter (see Cal. Rules of Court, rule 3.1310). In such cases, parties are entitled to arrange for a reporter at their own expense (fees may be recoverable as court costs). (Cal. Rules of Court, rule 2.956(c); see *Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 690, fn. 5 (citing text).) [¶] . . . [¶] [2]

" [9:171.5] *PRACTICE POINTER:* Check with the court to determine whether there are any special procedures associated with providing your own court reporter. . . .

"(1) [9:172] **Transcript may be essential for appellate review:** Unless a court reporter is present, the losing party may have no effective way of challenging the court's ruling by writ or appeal: 'In the absence of a transcript, the reviewing court will have no way of knowing . . . what grounds were advanced, what arguments were made, and what facts may have been admitted, mutually assumed or judicially noticed at the hearing. *In*

---

[2] Mendocino County has such a local rule, rule 4.4. It provides as follows: "**Reporting of Law and Motion matters** [¶] This court does not regularly provide for reporting or electronic recording of hearings in civil or probate matters. Any party who wishes to obtain an official verbatim transcript of a law and motion hearing shall follow the procedure set forth in local rule 20.2) (Cal. Rules of Court, rule 3.1310.) (Former rule 8.7 renumbered effective Jan. 1, 2013.)"

12

*such a case, no abuse of discretion can be found except on the basis of speculation.'* (*Snell v. Sup.Ct. (Marshall Hosp.)* (1984) 158 [Cal.App.3d] 44, 49 (emphasis added); see also *GT, Inc. v. Sup.Ct. (Santa Cruz Sentinel Publishers, Inc.)* (1984) 151 Cal.App.3d 748, 756.)

"[9:173] **PRACTICE POINTERS:**  If you are appearing in a court in which law and motion hearings are not regularly reported, and there is the slightest chance you would seek appellate review if the judge rules against you, be sure to have a court reporter present!  [¶] . . .[¶]

"[9:174] **Caution—failure to request reporters as malpractice?**  If the matter is one in which a transcript may be essential for appellate review, it *may* constitute malpractice for an attorney to fail to have a court reporter present.  (See *In re Christina P.* (1985) 175 Cal.App.3d 115, 128—failure to request court reporter in proceeding to remove child from parental custody raised 'cognizable claim' of ineffective assistance of counsel.)"  (Weil & Brown, *supra*, ¶¶ 9:171-9:174, pp. 9(1)131-9(l)-133.)

Based on the absence of a transcript, Reiter is not even able to assert abuse of discretion.

Nor has he.  All Reiter attempts is to reargue his fact-based position, and claim in essence that the trial court *had* to believe his version of events.  As Reiter distills it in his reply brief, "The evidence shows C. Martin was properly served and had actual knowledge of the pendency of the lawsuit; and, if actual notice was lacking, such was the fault of C. Martin and is not excusable."

There was, of course, another side to the story, one the trial court could—and did—accept.  Thus, for example, Manning declared that he "never obtained actual notice of this lawsuit.  My lack of . . . actual notice in time for C. Martin to defend the action was not caused by my avoidance of service or inexcusable neglect."  The issue is not whether C. Martin had properly updated its agent for service of process form with the Secretary of State, or which side is more credible.  And evidence supplied by Manning suggests that Reiter knew that C. Martin (and Manning) lacked actual notice as of July 2013, and did nothing to correct it.

We close with the observation that there is no evidence in the record indicating that Reiter or his attorney Clausen made any attempt to notify C. Martin directly, or through Manning, of his plan to file a request for entry of default—no warning that a default might come. Once again, Weil & Brown is apt:

" '[5:68] **Ethical Obligation to Warn Opposing Counsel:** If plaintiff's counsel knows the identity of the lawyer representing defendant, he or she owes an ethical obligation to warn before requesting entry of defendant's default. Failure to do so is a *professional discourtesy* to opposing counsel that will not be condoned by the courts: "The quiet speed of plaintiffs' attorney in seeking a default judgment without the knowledge of defendants' counsel is not to be commended." (*Smith v. Los Angeles Bookbinders Union No. 63* (1955) 133 Cal.App.2d 486, 500, disapproved on other grounds in *MacLeod v. Tribune Pub. Co., Inc.* (1959) 52 Cal.2d 536, 551; [citations].)

" 'Even legitimate tactics must sometimes yield to the only goal that justifies the very existence of our judicial system; i.e., the resolution of our citizens' disputes and the administration of justice.' (*Brown v. Presley of So. Calif.* (1989) 213 Cal.App.3d 612, 620, fn. 3—the notion that ours is a 'dog-eat-dog business' governed by the 'law of the jungle' should be curtailed, not rewarded.)

"a. [5:69] **No legal obligation:** The duty to warn opposing counsel is an ethical rather than a legal requirement. As noted by one court, "While as a matter of professional courtesy counsel should have given notice of the impending default, and we decry this lack of professional courtesy . . . counsel was *under no legal obligation* to do so.' (*Bellm v. Bellia* (1984) 150 Cal.App.3d 1036, 1038 (emphasis added); [citations].)

"b. [5:70] **Effect of failure to warn:** In the absence of a prior warning of default, courts are inclined to grant CCP §473(b) motions to set aside defaults. [Citations.] [¶] . . .[¶] (Weil & Brown, *supra, ¶¶* 5.68-5.70, pp. 5-19-5-20.)

## DISPOSTION

14

The order granting C. Martin relief from default is affirmed.  C. Martin shall recover its costs on appeal.

_____

Richman, Acting P.J.


We concur:


_____

Stewart, J.


_____

Miller, J.