Filed 9/15/16  Minhall, Inc. v. Christensen CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MINHALL, INC.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>RICHARD A. CHRISTENSEN et al.,<br><br>        Defendants and Respondents. | A145669<br><br>(San Francisco County<br>Super. Ct. No. CGC-13-535245) |

Plaintiff and appellant Minhall, Inc. appeals from the judgment entered after the trial court granted summary judgment to defendants and respondents Richard A. Christensen and Bacca Da Silva Couture, Inc. (BDS).  The grant of summary judgment was based on issues sanctions awarded by the court after Minhall failed to comply with an order to produce its principal, Dr. Jimmy Wong (Dr. Wong), for a deposition.  We affirm.

BACKGROUND

In April 2008, BDS leased commercial retail space on Sutter Street in San Francisco from Minhall (the Lease).  The specified Lease term was May 1, 2008 through January 31, 2014.  The Lease provided that BDS would pay $4,250 in monthly rent for the first nine months.  Beginning February 1, 2009, the rent was to double to $8,500, and the rent was subject to annual increases for the rest of the term.  BDS's President, Mr. Christensen, signed a personal guaranty of BDS's obligations under the Lease through

1

January 31, 2013 (the Guaranty). Mr. Christensen had the option of terminating the Guaranty on January 31, 2011 if BDS paid an increased security deposit by that date.

BDS was in the business of selling luxury apparel. The parties agree an economic recession occurred after the Lease was signed; Mr. Christensen averred BDS's business was seriously impacted and BDS was unable to pay the rent increases in the Lease.

Dr. Wong is Minhall's sole director and officer, and the principal owner and decision-maker for the company. David Blatteis is Minhall's property manager and was respondents' point of contact for Minhall. Mr. Christensen told Mr. Blatteis that BDS could not afford to pay more than $4,250 per month. Mr. Christensen averred he repeatedly told Mr. Blatteis that if Minhall required them to pay more, BDS would declare bankruptcy and vacate the premises. Mr. Christensen reminded Mr. Blatteis of the large number of vacancies on Sutter Street. Mr. Christensen also averred that, if BDS had been required to pay higher rent, he would have exercised his option to terminate the Guaranty two years early. Mr. Blatteis told Dr. Wong some rental income would be better for Minhall than none at all.

BDS continued to offer payments of $4,250 per month to Minhall, increasing to $4,750 per month in the final months of the tenancy. Mr. Christensen averred Minhall accepted all of the rent payments without objection, as payments of the rent in full.

Mr. Christensen averred that, in September or October 2013, Minhall demanded for the first time that BDS pay the difference between the rent rates in the Lease and the amounts actually paid during the course of the tenancy. In November 2013, Minhall filed the present action against BDS and Mr. Christensen, under the Lease and Guaranty. Under the Lease, Minhall sought damages of $308,921, plus prejudgment interest; under the Guaranty, Minhall sought damages of $249,989, plus prejudgment interest. Minhall also sought its attorney fees and costs.

BDS filed for bankruptcy in May 2014. On July 15, Minhall filed a motion for summary judgment against Mr. Christensen. On July 24, 2014, respondents noticed the deposition of Minhall itself. They set the deposition for August 20 in San Francisco and requested that Minhall designate and produce those persons most qualified to testify as to

2

20 matters. Minhall designated Mr. Blatteis as the person most qualified to testify on its behalf as to most of the matters. As to five of the matters, Minhall designated Dr. Wong as the person most qualified to testify on its behalf, although it objected on the ground that the matters were irrelevant to the lawsuit. Minhall produced Mr. Blatteis to be deposed on August 21, but failed to produce Dr. Wong. Mr. Blatteis lacked knowledge as to certain corporate matters, expressed concern he could not testify as to Dr. Wong's knowledge, and said Dr. Wong was the person who actually had knowledge about various matters.

On September 5, 2014, respondents moved to compel Minhall to produce Dr. Wong for deposition. Respondents argued deposing Dr. Wong was reasonably likely to result in testimony concerning, among other things, what Minhall did in relation to the acceptance of reduced rents from BDS and Minhall's knowledge of the economic circumstances underlying the requested rent reductions.

On September 16, 2014, the trial court, acting through a judge pro tem, granted the motion to compel following a hearing on the motion. Minhall was ordered to produce Dr. Wong to testify on its behalf by September 26, and to pay $1,000 in monetary sanctions to respondents. The order directed that Dr. Wong was to testify as Minhall's person most knowledgeable as to nine of the twenty topics specified in the notice of deposition.

Respondents' counsel averred that, following entry of the order, he attempted to schedule Dr. Wong's deposition, but Minhall did not cooperate. On September 22, 2014, Minhall's counsel sent respondents' counsel an e-mail indicating that Dr. Wong was not going to appear to be deposed by the September 26 deadline.[1]

On September 26, 2014, respondents moved for terminating or issues sanctions against Minhall. With respect to issues sanctions, respondents sought to prohibit Minhall

---

[1] Minhall contends its failure to produce Dr. Wong was due to miscommunication between Wong and Minhall's then counsel, Stephen Wong, citing former counsel's declaration filed in support of Minhall's Code of Civil Procedure section 473 motion for relief from the judgment. As explained later in this decision, the declaration is not part of the record that can be considered on appeal.

3

from contesting several facts relevant to their affirmative defenses, including, for example, that Minhall agreed to reduce BDS's rents and accepted BDS's rents as payments in full. Minhall opposed the motion on the grounds that Dr. Wong's testimony was not important to the issues in the case and respondents had obtained the same information sought from Dr. Wong through other discovery, including by deposing Mr. Blatteis. Those were essentially the same arguments Minhall advanced in unsuccessfully opposing respondents' September 5 motion to compel. Further, Minhall "re-designated" Mr. Blatteis as the person most qualified to testify on its behalf as to *all* matters specified in respondents' deposition notice and stated that Dr. Wong would not be a witness at trial. Minhall did not offer any excuse for its failure to produce Dr. Wong for deposition and did not state it was willing to produce him in the future. The opposition indicated Dr. Wong's failure to appear was willful, arguing "[i]t is understandable why Dr. Wong is reluctant to commit to coming to San Francisco." Minhall argued terminating sanctions were inappropriate, but did not address respondents' request for issue sanctions.

On October 23, 2014, the trial court (again through a judge pro tem) granted the motion for sanctions.[2] The court imposed issue sanctions, deeming the following facts "conclusively established for all purposes in this lawsuit": (1) "Plaintiff agreed to reduce BDS's monthly rents under the Lease from February 1, 2009 through the end of BDS's tenancy"; (2) "Plaintiff accepted all monthly rents offered by BDS as payments in full"; (3) "Plaintiff did not object to any of BDS's tenders of rents"; (4) "Plaintiff did not request that BDS ever pay the increased rents scheduled in the Lease"; (5) "Plaintiff was aware of BDS's financial status and provided with BDS's financial statements"; (6) "Plaintiff was advised that BDS would declare bankruptcy and vacate the premises if it were required to pay rents at the rates stated in the Lease"; and (7) "Plaintiff knew that the Guaranty contained an option to terminate it two years early." The court also imposed monetary sanctions in the amount of $2,500.

---

[2] The order was signed October 23, 2014, and stamped as filed October 27.

4

The trial court denied Minhall's motion for summary judgment, and respondents filed their own motion for summary judgment in reliance on the facts established in the sanctions order. On April 21, 2015, the court entered an order granting respondents' motion. Among other things, the order stated, "The facts conclusively established by the October 23, 2014 discovery order show [respondents] are entitled to summary judgment as a matter of law." The court entered judgment in respondents' favor on May 5, 2015.

On June 30, 2015, Minhall filed a motion for relief from the judgment under Code of Civil Procedure, section 473, subdivision (b),[3] noticed for hearing on July 30.[4] The motion was made on the grounds that the sanctions order and judgment were entered due to the mistake, inadvertence, surprise, or neglect of Minhall or its prior counsel. The motion was supported by a declaration from Minhall's prior counsel outlining, among other things, difficulties he had experienced in communicating with Dr. Wong. Minhall filed its notice of appeal on July 9, and the motion for relief was taken off calendar.

DISCUSSION

Minhall contends the trial court erred in imposing issue sanctions due to Minhall's failure to produce Dr. Wong for deposition. "The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 (*Doppes*).) Minhall has not shown the trial court abused its discretion.

Section 2025.450, subdivision (h) authorizes a trial court to impose an issue, evidence, or terminating sanction under section 2023.030 if a party "fails to obey an order compelling attendance, testimony, and production." As to issue sanctions, subdivision (b) of section 2023.030 provides: "The court may impose an issue sanction ordering that designated facts shall be taken as established in the action in accordance with the claim of the party adversely affected by the misuse of the discovery process. The court may also

---

[3] All undesignated statutory references are to the Code of Civil Procedure.
[4] The trial court denied Minhall's ex parte application for an order shortening time and setting the motion for hearing prior to the time that Minhall would need to file its notice of appeal.

5

impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses."

"The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. 'Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." ' " (*Doppes*, *supra*, 174 Cal.App.4th at p. 992.) "The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should ' "attempt[] to tailor the sanction to the harm caused by the withheld discovery." ' [Citation.] The trial court cannot impose sanctions for misuse of the discovery process as a punishment." (*Ibid.*) "In exercising its broad discretion to sanction discovery abuses, the trial court may impose any sanction authorized by statute that will enable the party seeking discovery to obtain the objects of the discovery sought. [Citation.] 'A discovery sanction may not place the party seeking discovery in a better position than it would have been in if the desired discovery had been provided and had been favorable.' " (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 109.)

At the outset, we reject Minhall's attempt to rely on the declaration of its prior counsel submitted in support of its section 473, subdivision (b) motion for relief from the judgment. This court's "appellate jurisdiction" is "the power to review and correct error in trial court orders and judgments." (*Leone v. Medical Board* (2000) 22 Cal.4th 660, 668.) Thus, " '[i]t is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered. [Citation.] This rule preserves an orderly system of litigation by preventing litigants from circumventing the normal sequence of litigation.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) As respondents point out, "the trial court cannot have made an erroneous decision based on evidence and argument that Minhall never submitted to the court for consideration." Accordingly, in determining whether the trial court erred in imposing

6

issue sanctions we give no consideration to the declaration of prior counsel submitted in support of Minhall's post-judgment motion for relief.

Minhall argues the trial court's issues sanctions are excessive because it did not engage in willful discovery misconduct. However, in so arguing, Minhall relies on the declaration of its prior counsel submitted in support of its motion for relief from the judgment, which cannot be considered on appeal. Based on the information before the court at the time of the sanctions order, it was reasonable for the court to conclude Minhall's failure to produce Dr. Wong was willful. Minhall was aware of the order compelling the production of Dr. Wong to be deposed, nothing before the court suggested Minhall was unable to comply, and Minhall did fail to comply. That was willful misconduct justifying the imposition of appropriate sanctions. (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 787–788 ["A willful failure does not necessarily include a wrongful intention to disobey discovery rules. A conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance, is sufficient to invoke a penalty."].)

Minhall also contends the trial court abused its discretion in imposing issue sanctions because respondents "obtained full and complete discovery on the relevant issues in the case and had a fair opportunity to defend themselves on the merits." Minhall emphasizes that Mr. Blatteis was the only person who communicated with respondents regarding the Lease; Mr. Blatteis had been deposed as to his communications with respondents and Dr. Wong about the Lease; and Minhall had produced all related documents. Minhall further argues that a number of the matters regarding which Dr. Wong was to be deposed are irrelevant to the issues in the case, such as Minhall's corporate structure, owners, management personnel, minutes, and board resolutions. Minhall was also directed to produce Dr. Wong to be deposed regarding the rent due under the Lease and the modification of the Lease, as well as his knowledge of the economic circumstances facing BDS, but Minhall argues any relevant knowledge Dr. Wong possessed came from information provided by Mr. Blatteis, which was already provided to respondents.

7

Minhall's argument misses the mark. It is undisputed that Dr. Wong was the ultimate decision-maker regarding all matters relating to the Lease, including any rent reductions.[5] Accordingly, it was proper for respondents to seek to obtain Dr. Wong's sworn testimony regarding his understanding of the Lease, the nature of respondents' payments, and whether Minhall approved a reduction in rent or merely a postponement in rent collection. Moreover, respondents could properly seek to ask Dr. Wong about his knowledge of BDS's financial condition and the likelihood the leased property would have remained vacant if BDS had ceased operations, as well as the consequences of a decision by Mr. Christensen to terminate the Guaranty early. It was also proper for respondents to seek to question Dr. Wong about his communications with Mr. Blatteis, in order to ascertain the bases for some of Dr. Wong's assertions to Mr. Blatteis and to determine whether there were differing recollections on any material issues.

Mr. Blatteis's deposition testimony made it clear that Dr. Wong was the person most knowledgeable about whether Minhall had actually approved a rent reduction and other related issues. During his deposition on August 21, 2014, Mr. Blatteis was asked whether he understood he had been designated as Minhall's person most knowledgeable, and Mr. Blatteis said he was "concerned, because I have certain responsibilities and powers under my property management agreement . . . . I do not know specifically, or I can't say what is in the mind of the principal stockholder of the corporation, Minhall. And I don't know how he feels or wants to express himself about issues that are going to be discussed here today." Mr. Blatteis testified he was unaware what corporate procedures would be required to approve a rent reduction or modification of a lease or whether any such procedures were followed with respect to BDS's rent or the Lease. He

_____

[5] It its opposition to the September 2014 motion to compel, Minhall asserted that Dr. Wong "makes all the business decisions for Minhall in connection with the operation of" the property at issue "and directs Mr. Blatteis to carry them out."

testified he personally thought that the past due rent would be forgiven but Dr. Wong made it clear to him in October 2013 that was not the case.[6]

Minhall's knowledge and conduct at the corporate level are relevant to respondents' affirmative defenses that Minhall waived any objections to the amounts respondents paid, that Minhall is equitably estopped from seeking back rents from respondents, and that the parties orally modified the Lease. When Minhall failed to comply with the trial court's order to produce Dr. Wong to be deposed, the trial court properly awarded issue sanctions that put respondents in the position they would have been had the deposition testimony "been entirely favorable." (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 229; see also *In re Marriage of Chakko*, *supra*, 115 Cal.App.4th at p. 109.) Because respondents sought to use Dr. Wong's testimony to support their affirmative defenses, it would not have been an effective sanction to, as Minhall suggests, prohibit Minhall from presenting Dr. Wong as a witness at trial. (*Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 929 ["An evidence sanction is not effective where the party withholding the evidence is not the party who wishes to use it."].)

In its reply brief, Minhall disputes that Dr. Wong's testimony, had it been favorable to respondents, could have provided support for the affirmative defenses. It asserts, "Dr. Wong's intention either to accept, or not to accept, the reduced rental as full payment, or his motives for doing so, are immaterial to their defenses under the

---

[6] Respondents submitted in opposition to Minhall's motion for summary judgment an October 2013 e-mail exchange between Dr. Wong and Mr. Blatteis obtained in discovery. In the exchange, Dr. Wong states, "You have always said and implied and understand it is not a actual lowering of rent and has collected them on our behalf based on the fact that he guaranteed to pay back the unpaid amount." Mr. Blatteis responds, "I do not remember at all saying/implying that Richard Christiansen would always make up the difference.[¶] I am sorry if there was this misunderstanding between you and me.[¶] I had assumed that . . . you were accepting the payments that he was making, and not going to be asking for more....maybe my error.[¶] I know that Christensen assumed he would not be asked for more." Respondents could have asked Dr. Wong about this exchange in a deposition, which potentially could have resulted in a concession from Dr. Wong that he had never before told Mr. Blatteis that Minhall expected to collect the rent shortfall.

9

circumstances because it is undisputed that Dr. Wong had no communications whatsoever with Respondents regarding the lease." Minhall cites no authority in support of its apparent contention that Minhall's decision-maker's intentions and understandings are wholly irrelevant to respondents' affirmative defenses of waiver, estoppel, and modification of the Lease. And, although Minhall asserts that Dr. Wong would have testified contrary to respondents' position, Minhall has not shown there was no possibility that, under oath, Dr. Wong would have admitted the company agreed to reduce BDS's monthly rents and accepted BDS's rent as payments in full.

Minhall cites various pieces of evidence it argues shows that it did not accept BDS's tenders of rent as payments in full and that it requested BDS pay the back rent due. That evidence did not preclude the trial court from imposing issue sanctions establishing to the contrary. Issue sanctions "may be proper even when inconsistent evidence is available . . . because the sanctions 'effectively remov[e] from the jury's consideration evidence favorable to the offending party's position, or . . . deem[] issues in favor of the aggrieved party even though the offending party has strong evidence to the contrary. Such is the natural consequence of serious discovery violations.' [Citation.]" (*NewLife Sciences, LLC v. Weinstock* (2011) 197 Cal.App.4th 676, 687.)

The cases Minhall cites where a trial court was held to have abused its discretion are distinguishable. In *Thomas v. Luong* (1986) 187 Cal.App.3d 76, the Court of Appeal reversed a trial court's order entering a defendant's default due to discovery violations. There, however, the defendant was missing and his counsel offered to stipulate to liability before entry of the sanctions order. (*Id.* at pp. 81–82.) In *Brown v. Presley of So. California* (1989) 213 Cal.App.3d 612, the trial court dismissed the plaintiff's action after she failed to appear at a deposition. (*Id.* at p. 615.) The plaintiff filed a section 473 motion for relief, attaching her attorney's declaration explaining his failure to file a written opposition to the sanctions motion, his absence at the hearing on sanctions, and that the plaintiff was available and willing to be deposed. (*Id.* at pp. 615–620.) Based on those facts, the Court of Appeal reversed, concluding "the court's use of the ultimate sanction of dismissal was excessive." (*Id.* at p. 620.) In *Crummer v. Beeler* (1960) 185

10

Cal.App.2d 851, the appellant challenged denial of his motion for relief from a default judgment, entered as a discovery sanction. The Court of Appeal reversed because the sanction was too "drastic" where the record, including a declaration submitted in support of the post-judgment motion, demonstrated the defendant had always been willing to appear for a deposition and the only issue was whether the deposition should be delayed to accommodate the defendant's travel schedule. (*Id.* at pp. 853–854, 860.)

In the present case, in response to the sanctions motion Minhall offered no explanation for its failure to produce Dr. Wong, provided no assurance he would be produced in the future, and proposed no adequate alternative to the issue sanctions. Unlike *Brown* and *Crummer*, this is not an appeal from denial of a section 473 motion for relief and our review does not involve consideration of the declaration submitted by Minhall in support of its motion for relief that was taken off calendar. Moreover, the trial court here imposed issue sanctions rather than terminating sanctions. Although the issue sanctions had the effect of requiring a grant of summary judgment in respondents' favor, Minhall has not, as explained previously, shown the issue sanctions were an inappropriate sanction for the failure to produce Dr. Wong.[7]

Because Minhall has not demonstrated the trial court abused its discretion in granting the motion for sanctions, we will affirm the judgment. We decline respondents' passing request that this court "direct Minhall not to present or advocate any further or renewed motion purporting to affect the affirmed judgment upon issuance of the remittitur," because that issue was not briefed on appeal.

---

[7] Minhall also cites several cases where terminating sanctions and entries of default judgments were upheld and asserts they "involved *significantly* more egregious discovery conduct than that presented here." However, here the trial court did not enter terminating sanctions and cases regarding the showing required to do so are inapposite. Moreover, that published cases upholding terminating sanctions may have involved more egregious conduct than that at issue in the present case does not show the trial court abused its discretion. We also reject Minhall's contentions that the record before the trial court showed the deposition of Dr. Wong was being pursued for an improper purpose and that the trial court's issue sanctions were a violation of Minhall's constitutional due process rights.

11

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondents.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(A145669)

13